McClendon, Constable, v. First National Bank of
Lewisville, Ark.

Opinion delivered March 23, 1914.

1.. Attachment—becomes lien, when.—A writ of attachment consti-
tutes a lien on the personal property of the defendant therein, from
the time of the delivery of the writ of the officer.   (Page 189.)

2.  Chattel mortgage—failure to record—possession by mortgagee—
subsequent attachment.—A chattel mortgage, although not filed
for record, is a valid security between the parties; and when, by
virtue of it, the mortgagee takes possession of the mortgaged
property, after condition broken, he appropriates it to the debt
secured, and his title is good against a creditor of the mortgagor
who subsequently attaches the property in his possession.   (Page
189.)

3.  Chattel mortgages—breach of condition—right of mortgagee to
possession.—Where a chattel mortgage provides that the mort-
gagee may take possession of the mortgaged property. if the mort-
gagor by negligence or carelessness permits the property to waste.
damage or deteriorate in value. and it appears that the mortgagor
had sold other mortgaged property and left the country.   Held
that the mortgagee was authorized in taking possession of the
property to prevent waste and deterioration.   (Page 189.)

Appeal from Lafayette Circuit Court; *Jacob M. Car-
ter,* Judge; affirmed.

*D. L. King,* for appellant.

1.   It was error to direct a verdict for plaintiff.   No
sufficient possession had been taken by the plaintiff be-
fore the lien of the attachment.   65 Ark. 33; 98 *Id.* 380;
100 *Id.* 431.

2.   Defendant should have been permitted to intro-
duce his evidence before a jury.   The mortgage was not
recorded, and its conditions were not broken.   The mort-
gage was not properly acknowledged.   56 Ark. 511; 10
Wall. 650, 19 L. Ed. 1008.

*Searcy & Parks,* for appellee, filed no brief.

Hart, J.   Appellant prosecutes this appeal to re-
verse a judgment in replevin against him.   The facts
are as follows:

The First National Bank of Lewsville had a mort-
gage on the cotton crop and other personal property of

Harry Wall. On the 25th day of October, 1912, Harry Wall executed a mortgage to the bank on two wagons, to secure an indebtedness due on or before December 1, 1912. The latter mortgage was not filed for record, and contained the following condition:

"But if after that day my said indebtedness, or any part thereof, shall remain due and unpaid, or should I, prior to said 1st day of December, 1912, sell or attempt to sell, ship or remove, or otherwise dispose of the property herein conveyed, or any part thereof, without the consent of said First National Bank, Lewisville, Ark., or should I, by carelessness or negligence, permit the said property to waste, damage or deteriorate in value, then, in either event, the said First National Bank, Lewisville, Ark., or legal representatives, agent or attorneys, are hereby authorized and empowered to take immediate possession of said property."

On Saturday following the execution of this mortgage, Wall sold several bales of cotton covered by the former mortgage given to the bank, and then left the country, his whereabouts for the time being unknown. On Sunday morning after the execution of the mortgage, Wall's wife called up C. C. DuBose, vice president of the bank, and told him that her husband had left. DuBose went to the farm and found that Wall had gone and had left the mortgaged property on the place. Wall's wife told DuBose that she was going to leave. On Monday morning DuBose took possession of the property, included in the first mortgage, as well as the two wagons in the mortgage involved in this case, and left the property in the custody of Dick Logan, a colored man, as the agent of the bank. DuBose took charge of the property about noon on Monday, the 28th day of October, 1912. About 4 or 5 o'clock in the afternoon on the same day another creditor of Harry Wall sued out a writ of attachment against his property and placed it in the hands of Leigh McClendon, as constable. The latter executed the writ of attachment by taking possession of the two wagons on the 29th day of October, 1912. The bank in-

stituted this action in replevin against the constable to recover possession of the wagons.

The court directed a verdict in favor of the bank, and it is insisted by counsel for appellant that this action of the court was erroneous.

A writ of attachment constitutes a lien on the personal property of the defendant therein from the time of the delivery of the writ to the officer. *McKinney* v. *Blakely,* 87 Ark. 405.

The writ of attachment was delivered to the constable in this case about 4 or 5 o'clock in the afternoon on the 28th day of October, 1912. DuBose, the agent of the bank, had taken absolute possession of the property in controversy at noon on that day.

In the case of *Applewhite* v. *Harrell Mill Company,* 49 Ark. 279, the court held:

"A chattel mortgage, though not filed for record, is a valid security between the parties; and when, by virtue of it, the mortgagee takes possession of the mortgaged property, after condition broken, this is an appropriation of it to the debt secured; and his title is good against a creditor of the mortgagor who subsequently attaches the property in his possession." See also Jones on Chattel Mortgages (5 ed.), § 179.

This brings us to the question of whether any of the conditions of the mortgage were broken. It will be noted that the mortgage provided that should the mortgagor, by carelessness or negligence, permit the property embraced in the mortgage to waste, damage or deteriorate in value, then, in either event, the bank, or its agents, are authorized and empowered to take immediate possession of the property. The undisputed evidence shows that the mortgagor had sold other mortgaged property and had left the country; that his wife also told the agent of the bank that she intended to leave the place where the mortgaged property was situated. Under these circumstances, the property was likely to suffer damage and deteriorate in value on account of not being in the custody of any one, and the mortgagee was entitled to take

charge of it under the stipulation in the mortgage above referred to. The testimony of the cashier of the bank was uncontradicted and consistent, and the court did not err in directing a verdict for appellee.

It is also contended by counsel for appellant that the court erred in refusing to allow him to introduce certain evidence which tended to contradict that adduced by appellee. We have carefully examined the bill of exceptions contained in the transcript, and it does not show that counsel for appellant offered to introduce any testimony whatever; but, on the contrary, it affirmatively shows that the testimony introduced by appellee was all the evidence that was introduced at the trial of the cause. Therefore, under the settled rules of practice of this court, there is nothing before us to review on the question of the exclusion of evidence.

The judgment will be affirmed.